*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

        Plaintiff/Counterdefendant-Appellee,

v

JAY JUAN-JARMAINE JONES,

        Defendant/Counterplaintiff,

and

DAILEY LAW FIRM, PC,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 12, 2022

No. 355953
Wayne Circuit Court
LC No. 19-014180-CK

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

        Defendant/Counterplaintiff, Dailey Law Firm, PC (Dailey),[1] appeals as of right the trial court's order granting summary disposition to plaintiff/counterdefendant, VHS of Michigan, Inc. (VHS), doing business as Detroit Medical Center, under MCR 2.116(C)(10). We affirm.

---

[1] Defendant/Counterplaintiff Jay Juan-Jarmaine Jones is not a party to this appeal.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Jay Juan-Jarmaine Jones was injured in an automobile accident. Jones retained Dailey under a contingency fee agreement to help him obtain insurance coverage. Dailey assisted Jones with accessing coverage under the Michigan Assigned Claims Plan (MACP). MACP assigned coverage to Citizens Insurance Company of the Midwest (Citizens).

As part of his treatment for his injuries, Jones received two magnetic resonance imaging (MRI) tests from VHS's subsidiary, Detroit Medical Center (DMC) Sinai Grace Hospital. VHS sent Citizens two invoices for the MRIs, totaling $10,592. Citizens sent Dailey two checks to pay for the MRIs, totaling $9,532.80, which reflected a reduced rate negotiated by Citizens and VHS (the "Citizens checks"). The checks were made payable to, "Sinai Grace Hospital and Dailey Law Firm PT." Dailey deposited the checks to its Interest on Lawyers Trust Account (IOLTA), but did not remit any payment to VHS.

VHS requested Dailey remit payment, but Dailey refused, stating it intended to retain one-third the total amount. According to Dailey, this amount reflected the attorney fees negotiated under the contingency agreement with Jones. VHS filed the complaint giving rise to this appeal, claiming, in part, Dailey unlawfully converted the funds for its own use. Later, VHS moved for summary disposition under MCR 2.116(C)(8), (9), and (10), arguing it was entitled to the entire amount of funds from the Citizens checks and Dailey was responsible for treble damages arising from its conversion. The trial court granted VHS's motion for summary disposition, awarding VHS damages totaling $9,532.80 against Jones, and treble damages totaling $28,598.40 against Dailey. Dailey moved for reconsideration, which the trial court denied. This appeal followed.

## II. CONVERSION

Dailey argues the trial court erred in granting VHS's motion for summary disposition on the basis of conversion because there was no evidence Dailey used the funds from the Citizens checks for its own use. We disagree.

### A. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Again, VHS moved for summary disposition under MCR 2.116(C)(8), (9), and (10). However, the trial court did not specify the specific subsection under which it granted summary disposition. To grant or deny summary disposition under MCR 2.116(C)(8) or (9), a trial court may not look beyond the pleadings. *Maiden*, 461 Mich at 119-120; *Village of Dimondale v Grable*, 240 Mich App 553, 565; 618 NW2d 23 (2000). MCR 2.116(C)(10), meanwhile, requires the parties to go beyond the pleadings and present other evidence either establishing or invalidating a genuine dispute of material fact. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). In this case, the trial court granted summary disposition after reviewing "the entirety of the record," which included exhibits supporting the parties' arguments. Therefore, summary disposition was granted on the basis of MCR 2.116(C)(10). See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

> The moving party has the initial burden to support its claim for summary disposition
> under MCR 2.116(C)(7) or (10) by affidavits, depositions, admissions, or other

documentary evidence. The burden then shifts to the nonmoving party to demonstrate a genuine issue of disputed fact exists for trial. To meet this burden, the nonmoving party must present documentary evidence establishing the existence of a material fact, and the motion is properly granted if this burden is not satisfied. Affidavits, depositions, and documentary evidence offered in support of, and in opposition to, a dispositive motion shall be considered only to the extent that the content or substance would be admissible as evidence. [*AFSCME*, 267 Mich App at 261 (citations omitted).]

The evidence should be considered "in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

"Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).

The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [*Id*. (quotation marks and citation omitted).]

## B. LAW AND ANALYSIS

Michigan recognizes two types of conversion—statutory conversion and common-law conversion. *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 344; 871 NW2d 136 (2015). VHS's motion for summary disposition argued Dailey committed statutory conversion when it deposited the two-party Citizens checks into its IOLTA. The requirements for statutory conversion are codified at MCL 600.2919a(1), which states, in part: "(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use." In contesting VHS's motion for summary disposition, Dailey made two arguments. First, Dailey argued its actions did not amount to a conversion. Second, Dailey contended it did not deposit the Citizens checks into its IOLTA for its "own use." We consider each argument in turn.

The statutory scheme does not define the term "conversion." "When a statute does not define a term, we will construe the term according to its common and approved usage." *Nelson v Grays*, 209 Mich App 661, 664; 531 NW2d 826 (1995). "A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). Therefore, we employ the common-law definition of the term "conversion."

Under the common law, "conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). To sustain its claim of statutory conversion, VHS was required to show Dailey wrongfully exerted domain over the Citizens checks. See *id*. In support of its contention Dailey wrongfully exerted domain over the Citizens checks, VHS pointed to MCL 440.3110(4) of the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*, which articulates the rights of parties to an instrument, including checks. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 72; 711 NW2d 340 (2006) ("A check is a negotiable instrument entered into between the maker and the payee."). Specifically, MCL 440.3110(4), states:

> (4) If an instrument is payable to 2 or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to 2 or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

As noted, the Citizens checks were payable to DMC Sinai Grace Hospital, VHS's subsidiary, *and* Dailey. With respect to MCL 440.3110(4), the second circumstance is present: "If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." See *Pamar Enterprises, Inc v Huntington Banks of Mich*, 228 Mich App 727, 733; 580 NW2d 11 (1998) ("When the word 'and' separates the names of two payees on an instrument, the instrument is payable jointly and not alternatively."). In other words, when an instrument is payable to two or more payees the instrument may only be acted upon by "all" the payees. Consequently, in this circumstance, a court may find a conversion where only one payee acts on an instrument. See MCL 440.3420(1); see also *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982) ("Checks are considered to be the property of the designated payee and may be the subject of a suit for conversion.").[2]

In support of its contention Dailey converted the Citizens checks, VHS presented copies of the Citizens checks showing they were payable to VHS's subsidiary, Sinai Grace *and* Dailey. Further, VHS offered the trial court the e-mail correspondence between Dailey's counsel, Brian Dailey, and VHS's counsel in which attorney Dailey stated: "I have received some payments for [Jones] and have deposited all to Dailey Law Firm, PC IOLTA. I do not have record of any checks made payable to DMC. The checks I have received from Citizens are made payable to Sinai Grace and Dailey Law Firm, PC."

Because VHS, as the moving party, presented evidence showing the Citizens checks were payable to *both* VHS and Dailey, and because VHS offered evidence showing only Dailey acted

_____

[2] While we recognize cases decided before November 1, 1990 are not binding on this Court, they may be considered for their persuasive value. MCR 7.215(J)(1); see also *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 444 n 4; 773 NW2d 29 (2009).

on the Citizens checks, the burden then shifted to Dailey to "demonstrate a genuine issue of disputed fact exists for trial" regarding Dailey's alleged conversion. *AFSCME*, 267 Mich App at 261. In response to VHS's motion for summary disposition, Dailey only offered one exhibit— copies of the front of the Citizens checks including Dailey's deposit slip purportedly showing Dailey's deposit of the Citizens checks into its IOLTA. Evidence of the Citizens checks with the deposit slip to the IOLTA did not bolster Dailey's contention it did not convert the Citizens checks. Indeed, Dailey's evidence effectively furthered VHS's contention Dailey wrongfully exerted domain over the Citizens checks. Again, an instrument payable to "2 or more persons not alternatively" requires action by "all" parties. MCL 440.3110(4). By offering evidence showing only its acts with respect to the Citizens checks, Dailey *supported* VHS's argument there was no genuine dispute of fact as to its conversion of the Citizens checks. Therefore, the trial court did not err in finding that Dailey converted the Citizens checks.

Even so, Dailey argued it did not convert the Citizens checks because it intended to only keep a portion of the funds. There are two problems with this argument. First, while Dailey argued its *intent* was to only keep a portion of the funds, Dailey *actually* kept all the funds. Indeed, it is undisputed by the parties Dailey has never disbursed any funds to VHS from the Citizens checks and Dailey admits in its pleadings to this Court *all* the funds from the Citizens checks remain in its IOLTA. Moreover, Dailey's argument it intended to only keep a portion of the funds did not effectively refute VHS's argument Dailey converted the funds. Again, once the burden shifts to the nonmoving party, the nonmoving party must present some *documentary* evidence establishing a genuine dispute of fact. *AFSCME*, 267 Mich App at 261. Dailey presented to the trial court no documentary evidence to this effect. Consequently, Dailey failed to meet its burden as the nonmoving party and there was no error on this basis.

The next question is whether there was a genuine dispute of material fact as to whether Dailey converted the Citizens checks for its "own use." The phrase " 'to the other person's own use' under MCL 600.2919a(1)(a) requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines & Equip, Inc*, 497 Mich at 340. Our Supreme Court admits the definition of "own use" is "broad." *Id*. at 359. Thus, to support its motion for summary disposition VHS needed to present some evidence Dailey's retention of the Citizens checks for "some purpose personal to the defendant's interests." *Id*.

Again, VHS's motion for summary disposition included the e-mail correspondence between attorney Dailey and VHS's counsel. In this correspondence, attorney Dailey stated:

> I am not sure if you are requesting that Dailey Law Firm, PC forfeit its attorney fee on these payments. If that is your inquiry Dailey Law Firm, PC declines to forfeit its attorney fee on these payments. Please reply to all attaching the bills to which these payments apply and I will process a payment to your client the amount remaining in Dailey Law Firm, PC IOLTA after deduction of the 1/3 Attorney Fee.

Attorney Dailey's statement, he intended to keep a "deduction of the 1/3 Attorney Fee" is evidence Dailey intended to keep at least some of the money for its interests. *Id*. As discussed, once VHS

presented this evidence, the burden then shifted to Dailey to present evidence it did not intend to keep the Citizens checks for its own interest. See *AFSCME*, 267 Mich App at 261.

To refute VHS's argument that keeping the Citizens checks was not for its own interest, Dailey pointed to the rules of professional responsibility governing attorney conduct. Specifically, Dailey argued "Michigan Rule of Professional Conduct 1.15 requires that I deposit all disputed funds into the IOLTA trust account." Again, the only *evidence* Dailey offered were the copies of the fronts of the Citizens checks and a deposit slip purporting to show the deposit of the funds into Dailey's IOLTA. Construing this evidence in a light most favorable to Dailey, all Dailey's proffered evidence shows is the deposit of all the funds into its account. See *Maiden*, 461 Mich at 120.

Dailey acknowledged VHS is entitled to two-thirds of the funds. However, the rules of professional conduct state: "When two or more persons (one of whom may be the lawyer) claim interest in the property, it shall be kept separate by the lawyer until the dispute is resolved. The lawyer *shall promptly* distribute all portions of the property as to which the interests are not in dispute." MRPC 1.15(c) (emphasis added). If Dailey wanted to effectively refute the claim the funds were not for its own use on the basis of MRPC 1.15, at the very least, Dailey should have presented some evidence showing its prompt remittance of two-thirds of the funds to VHS. By only presenting evidence of its deposit of *all* the funds to its IOLTA, Dailey's argument regarding its obligation under to the rules of professional responsibility did not refute VHS's argument Dailey intended to keep the funds for its own use.

In sum, VHS satisfied its burden showing documentary evidence Dailey converted the Citizens checks for its own use. MCL 600.2919a(1). Once the burden shifted, Dailey did not present sufficient documentary evidence refuting this assertion. Therefore, the trial court did not err in granting summary disposition on the basis of statutory conversion because there was not a genuine dispute of fact as to whether Dailey converted the Citizens checks for its own use.

## III. CHARGING LIEN

Dailey next argues it holds an attorney's charging lien over the funds received from the Citizens checks. By granting summary disposition in VHS's favor and awarding damages, Dailey contends the trial court effectively invalidated its right to be paid attorney fees. We disagree.

## A. STANDARD OF REVIEW

Generally, this Court reviews for an abuse of discretion issues involving the award of attorney fees. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. However, this issue also requires this Court to review issues of law for which its review is de novo. *Id*.

## B. LAW AND ANALYSIS

As an initial matter, we see fit to contextualize Dailey's arguments. Dailey argues the trial court effectively "obliterated" its right to collect attorney fees. That is not true. As to VHS's motion for summary disposition, the trial court simply found: (1) Jones was responsible for the medical costs billed by VHS; and (2) Dailey was responsible for treble damages because Dailey converted the Citizens checks under MCL 600.2919a(1). Nothing in the trial court's order precluded Dailey from collecting fees. What this order does do is circumscribe *from whom* Dailey may collect a fee. Dailey's arguments on appeal acknowledge, "Jones is responsible for paying his attorney fee from the amount recovered from Citizens pursuant to the agreement." Yet, Dailey's arguments on appeal appear to argue *VHS* was responsible for paying Dailey's attorney fee by accepting a reduction in the amount billed. That is, it seems Dailey believes the trial court erred by failing to reduce the amount owed to VHS by the one-third fee articulated in the contingency agreement between Jones and Dailey. As we discuss, while attorneys hold an equitable right to collect fees, medical providers are not obliged to reduce their amount charged to cover an insured's attorney fees.

"Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services." *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2014) (citation omitted). A "charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). "The attorneys' charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id*.

> The [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well . . . . [*Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013) (quotation marks and citation omitted).]

Under the "American rule," "attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary." *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 474; 521 NW2d 831 (1994). One such exception is the common-fund exception, which is applied on the basis of equity. *Id*. at 475.

> [The common-fund exception] generally only applies when a prevailing party creates or protects a common fund that benefits itself as well as others. In such a case, courts of equity have traditionally held that it is unfair to allow others to benefit at the expense of the prevailing party without contributing to the costs incurred in securing the common fund. [*Id*.]

Though not explicitly stated, Dailey's arguments on appeal essentially contend it is entitled to attorney fees under the common-fund exception. Indeed, Dailey argues it "has a right to be paid for its services from the amount recovered from Citizens pursuant to its contingency fee agreement with Jones." This is similar to Dailey's argument to the trial court which averred: "It is . . .

ridiculous and unjust for Dailey Law Firm to bear the time and expense of litigating [VHS's] bills without payment in return." In support of this argument, Dailey pointed to this Court's analysis in *Miller v Citizens Ins Co*, 288 Mich App 424, 426; 794 NW2d 622 (2010) (*Miller I*), aff'd in part, rev'd in part 490 Mich 905 (2011).

In *Miller I*, this Court used the common-fund exception to allow the plaintiff's attorney to collect fees from the medical payments made under the plaintiff's no-fault insurance coverage. *Id.* at 442. This Court reasoned the medical provider received benefits negotiated by the plaintiff's attorneys and "[i]t would be unfair to allow the [medical provider] . . . to benefit from the efforts of [the] plaintiff's attorneys without contributing to the costs incurred in securing insurance proceeds and the common fund." *Id.* at 438. In reaching this conclusion, this Court stated: "[the] plaintiff's attorneys were entitled to have part of their attorney fees deducted from the payment to be made to the [medical provider] for medical services provided . . . ." *Id.* at 442.

Despite Dailey's reliance on *Miller I*, in *Miller v Citizens Ins Co*, 490 Mich 905, 905 (2011) *(Miller II)*, our Supreme Court rejected, in part, this Court's application of the common-fund exception in these circumstances, stating:

> This is an attorney fee dispute arising out of an action for benefits under the no-fault act, MCL 500.3101 *et seq.* As the Court of Appeals implicitly recognized, the [medical provider] is not liable for [the] plaintiff's attorney's fees under the no-fault act. We agree that [the] plaintiff is responsible for payment of her attorney fees consistent with the contingency fee agreement. Consistent with the common-law American rule, the no-fault act generally requires each party to pay its own attorney fees . . . . However, the Court of Appeals' reliance on the common-fund exception to the American rule was erroneous because no common fund was created.
>
> Of concern to this Court is that the circuit court's order, and the Court of Appeals' affirmance, could be mistakenly interpreted as extinguishing the [medical provider's] contractual right to payment for its services. We wish to make clear that this is not the case. No-fault benefits are "payable to or for the benefit of an injured person . . . ." MCL 500.3112. In this case, through settlement, the benefits were paid to [the] plaintiff, and her attorney asserted an attorney's charging lien over the settlement proceeds. Thus, the effect of this was only to settle claims as between the insurer, plaintiff, and her attorney. The circuit court's order of dismissal pursuant to the settlement agreement did not have the effect of extinguishing the [medical provider's] right to collect the remainder of its bill from plaintiff. Such a result could not have been achieved without an explicit waiver, or at least unequivocal acquiescence, by the [medical provider], which was not obtained. [*Id.*]

*Miller II* reiterates two principles discussed by the parties. *Miller II* acknowledged an attorney's right to collect attorney fees under a contingency agreement. *Id.* Even so, our Supreme Court concluded this right does not "extinguish[] the [medical provider's] contractual right to payment for its services." *Id.* That is, a medical provider is not obliged to reduce its costs to contribute to an insured's attorney fees. *Id.*

Again, the trial court's order did not preclude Dailey from recovering attorney fees. By awarding VHS the entire amount of funds from the Citizens checks, the trial court effectively restricted Dailey from recovering attorney fees from VHS. This order did not, however, prevent Dailey from receiving compensation for its efforts. As Dailey states, "Jones is responsible for paying his attorney fee from the amount recovered from Citizens pursuant to the agreement." To the extent Dailey believes it is owed attorney fees, Dailey's remedy is to file suit against Jones. Because the trial court's order did not limit Dailey's rights in this regard, there is no error for which reversal is warranted.

Dailey also presents several arguments which are abandoned on appeal. First, Dailey argues the "trial court invalidated its rights to the funds as a joint payee." Second, Dailey contends, VHS's motion for summary disposition "did not claim actual damages but skipped right to treble damages." Third, Dailey argues "VHS's remedy lies with the bank accepting the deposited checks." These arguments were not contained within the questions presented and are insufficiently briefed; therefore, they are abandoned on appeal. See MCR 7.212(C)(5); *Ketchum Estate v Dep't of Health & Human Servs*, 314 Mich App 485, 506-507; 887 NW2d 226 (2016); *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 458; 688 NW2d 523 (2004) (citation omitted).

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan